UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>    Plaintiff, | Case No. 1:11-cv-20 |
| vs. | Weber, J.<br>Litkovitz, M.J. |
| CONTENTS OF PNC BANK ACCOUNT<br>NO. XXX6926 IN THE NAME OF MON<br>AMOUR, INC., *et al.*,<br>    Defendants. | **REPORT AND**<br>**RECOMMENDATION** |

This matter is before the Court on the United States of America's motion for summary judgment (Doc. 41), to which defendants have not responded. For the following reasons, the undersigned recommends that the motion be granted.

**I. Background**

In January 2011, the United States of America (the Government) initiated this forfeiture action alleging that the three named bank accounts were subject to forfeiture because the monies contained therein were fraudulently obtained in violation of federal law. (Doc. 1). Nabih Shteiwi (Mr. Shteiwi) and Mon Amour, Inc. (Mon Amour) filed notices of claims in February 2011 asserting ownership interests in the named accounts.[1] (Docs. 7, 8). The Court subsequently granted the Government's motion to strike Mr. Shteiwi's claim for failure to comply with Rule G(8)(c) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions. (Doc. 23). On March 13, 2013, this Court recommended that the Government's motion for default judgment against Mr. Shteiwi be granted; no objection was filed and the District Judge adopted this recommendation the following month. (Docs. 30, 38).

---

[1] Mr. Shteiwi is the president of Mon Amour, Inc. (Doc. 7).

The party opposing a properly supported motion for summary judgment "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248 (quoting *First Nat'l Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253 (1968)). In response to a properly supported summary judgment motion, the non-moving party "is required to present some significant probative evidence which makes it necessary to resolve the parties' differing versions of the dispute at trial." *Sixty Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987) (quoting *First Nat'l Bank*, 391 U.S. at 288-89). Although the non-movant need not cite specific page numbers of the record in support of its claims or defenses, "the designated portions of the record must be presented with enough specificity that the district court can readily identify the facts upon which the non-moving party relies." *Guarino*, 980 F.2d at 405 (citing *Inter-Royal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989)).

The movant bears the burden of demonstrating that no material facts are in dispute. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The non-moving party's failure to respond to the motion does not lessen the burden on either the moving party or the Court to demonstrate that summary judgment is appropriate. *Mongan v. Lykins,* No. 1:09-cv-00626, 2010 WL 2900409, at *3 (S.D. Ohio July 21, 2010) (citing *Guarino*, 980 F.2d at 410; *Carver v. Bunch*, 946 F.2d 451, 454-455 (6th Cir. 1991)). The District Court in *Mongan* explained the Court's obligation when evaluating an unopposed motion for summary judgment as follows:

> [T]he Court must review carefully those portions of the submitted evidence designated by the moving party. The Court will not, however, sua sponte comb the record from [the non-moving party's] perspective. Instead, the Court may reasonably rely on [the movant's] unrebutted recitation of the evidence, or pertinent portions thereof, in reaching a conclusion that certain evidence and inferences from evidence demonstrate facts which are uncontroverted. If such

>   evidence supports a conclusion that there is no genuine issue of material fact, the
>   Court should determine that [the movants] have carried their burden. . . .

*Id.* (internal quotations and citations omitted).

**III. Facts**

The Supplemental Nutrition Assistance Program (SNAP) is a federally funded program administered by the United States Department of Agriculture. Recipients of SNAP benefits can purchase food from authorized retailers at the face value of the benefit. To participate in the program, retailers must be authorized by the Food and Nutrition Service of each state. Retailers may not exchange SNAP benefits for cash and they may only redeem SNAP benefits in connection with the sale of eligible food items. (Doc. 1, ¶ 8, Verified Complaint).

In Ohio, SNAP benefits are available through the use of magnetic strip cards or Electronic Benefit Transfer (EBT) cards. SNAP beneficiaries receive a unique account number and encrypted personal identification number (PIN) for their Ohio Direction Card. Much like a debit card, the SNAP account is accessed real time by authorized retailers' point-of-sale devices via telephone lines. Beneficiaries must enter their PIN for each transaction. (*Id.*, ¶ 9).

Authorized retailers are provided with card reading devices for SNAP customers buying eligible items. Every time a customer uses the card to make a purchase at an EBT authorized store, the EBT system automatically debits the beneficiary's account and credits the retailer's store account. (*Id.*, ¶ 10).

In April 2009, the United States Secret Service (USSS) joined the United States Department of Agriculture (USDA), the Office of Inspector General, the Bureau of Alcohol, Tobacco, Firearms and Explosives, the Ohio Department of Public Safety Investigative Unit and the Cincinnati Police Department in an ongoing investigation into the illegal use of food stamp benefits in violation of 7 U.S.C. § 2024(b) and (c). (*Id.*, ¶ 11). The investigation demonstrated

that from August 2008 to July 2010, Mr. Shteiwi and others were involved in the illegal acquisition and redemption of SNAP/EBT cards in exchange for ineligible items, including stolen tobacco products, cash, and firearms. (*Id.*, ¶ 12).

On approximately March 14, 2006, Nazih Shteiwi, as owner and president of Sutton Pony Keg, completed and submitted an application to the USDA to become an authorized SNAP retailer. Nazih Shteiwi had previously owned and/or managed three SNAP authorized stores in the Cincinnati, Ohio area. Mr. Shteiwi, Nazih Shteiwi's brother, ran the day to day operations at the Sutton Pony Keg. (*Id.*, ¶ 13).

Nazih Shteiwi identified a National City Bank business checking account in the name of Mon Amour, over which Nazih Shteiwi and Mr. Shteiwi had signature authority, as the designated account for the Sutton Pony Keg SNAP/EBT redemption/deposits. This account became a PNC Bank account, account number xxx6926, when National City Bank and PNC Bank merged. (*Id.*, ¶ 14).

The Government received information from two confidential informants who stated that Mr. Shteiwi, Nazih Shteiwi, and others allowed the purchase of SNAP benefits at the Sutton Pony Keg for ineligible items such as stolen tobacco products, cash, and firearms. (*Id.*, ¶ 15). From approximately August 2008 to July 2010, confidential informants conducted multiple undercover transactions at the Sutton Pony Keg whereby Nabih Shteiwi, among others, bought over $17,000.00 in food stamps benefits via SNAP cards. (*Id.*, ¶ 16). The illegally purchased SNAP benefits were used at the Sutton Pony Keg and redeemed for direct profit through the business's bank account. (*Id.*).

Brandon Shteiwi, the son of Nazih Shteiwi, swiped the SNAP/EBT cards using the point of sale electronic card reading device at Sutton Pony Keg to conceal or disguise the nature of the

food stamp proceeds by conducting multiple transactions with a single card in lower amounts to avoid detection. (*Id.*, ¶ 17). The action of swiping the SNAP cards caused an electronic transfer of funds into the PNC bank account. (*Id.*). The Shteiwis then cycled the funds from the PNC bank account back into the Sutton Pony Keg. (*Id.*, ¶ 18). On August 5, 2010, the Government seized the PNC bank account and $11,651.00 in United States currency pursuant to search and seizure warrants. (*Id.*, ¶¶ 2, 18).

Federal agents analyzed the SNAP redemptions and tax exempt sales from Sutton Pony Keg to determine a SNAP redemption percentage by year. (*Id.*, ¶ 19). The redemption percentage, set forth in the table below, was determined by dividing the SNAP redemptions by the exempt sales:

| Year | Redemptions | Exempt Sales | Redemption % |
|---|---|---|---|
| 2006 (Jun-Dec) | $5,261.20 | $65,705.10 | 8.007% |
| 2007 | $21,222.25 | $142,761.85 | 14.865% |
| 2008 | $54,855.02 | $129,638.60 | 42.313% |
| 2009 (Jan-Mar) | $13,576.82 | $31,629.30 | 42.924% |

The exempt sales (food sales) for October 2008 at Sutton Pony Keg were $7,750.87 as compared to the $8,190.61 of SNAP redemptions for a redemption percentage of 105.673%. It is very unlikely that this redemption percentage would be achieved without conducting SNAP trafficking for cash or ineligible items. (*Id.*, ¶ 20).

For comparison, agents analyzed the SNAP and WIC redemptions from Kroger Chain Store #438, which is located less than one-half mile from Sutton Pony Keg. (*Id.*, ¶ 21). The SNAP redemption percentages for the Kroger store for the same period were as follows:

| Year | Redemptions | Exempt Sales | Redemption % |
|---|---|---|---|
| 2006 (Jun-Dec) | $453,179.44 | $7,116,356.44 | 6.368% |
| 2007 | $806,671.46 | $12,602,417.82 | 6.400% |
| 2008 | $1,033,362.40 | $13,272,392.51 | 7.785% |
| 2009 (Jan-Mar) | $328,684.81 | $3,303,356.70 | 9.950% |

(*Id.*). Comparison of these tables shows that Sutton Pony Keg's SNAP redemption is higher than Krogers as follows: 1.639% higher in 2006; 8.465% higher in 2007; 34.528% higher in 2008; and 32.974% higher in 2009. (*Id.*, ¶ 22).

Mr. Shteiwi was indicted on July 2, 2010, by the Hamilton County Grand Jury in Case Number B 1003932 for violations of Ohio Rev. Code § 2913-46B, Illegal Use of SNAP Benefits. (*Id.*, ¶ 23). Mr. Shteiwi pleaded guilty on August 2, 2011, to one count of illegal use of SNAP benefits and one count of receiving stolen property. (Doc. 41, Ex. 3, ¶ 3, Declaration of Michael S. Hackney).

On July 2, 2010, Nazih Shteiwi was indicted by the Hamilton County Grand Jury in Case Number B 1003933-B for violations of Ohio Rev. Code § 2913-46B, Illegal Use of SNAP Benefits. (Doc. 1, ¶ 24). Nazih Shteiwi pleaded guilty on March 19, 2012, to three counts of attempting to illegally use food stamps for his activities at another one of his stores. (Hackney Decl., ¶ 4). Nazih Shteiwi's sons, Brandon and Ibrahim Shteiwi, also plead guilty, respectively, to food stamp fraud and knowingly selling a firearm to a convicted felon in violation of federal law. (Doc. 1, ¶¶ 27-28).

Counsel for the Government sent requests for admission to counsel for Mon Amour in January 2013. (Doc. 41, Ex. 2, ¶ 3, Declaration of Matthew J. Horwitz). As of May 30, 2013,

Mon Amour (Claimant) has failed to respond to the requests despite receiving two extensions totaling 48 days. (*Id.*, ¶¶ 5-7). By virtue of not responding, Mon Amour has admitted the following facts:

> 1. That from January 1, 2001 to August 5, 2010, PNC Account No.xxx6926 was maintained by Claimant as the designated account for proceeds of SNAP/EBT redemptions at the Sutton Pony Keg, 1911 Sutton Avenue, Cincinnati, Ohio.
>
> 2. That from January 1, 2001 to August 5, 2010, PNC Account No.xxx6926 contained only the proceeds of SNAP/EBT redemptions at the Sutton Pony Keg, 1911 Sutton Avenue, Cincinnati, Ohio.
>
> 3. That from January 1, 2001 to August 5, 2010, the contents of PNC Account No.xxx6926 were transferred, directly or indirectly, to the cash register located at Sutton Pony Keg, 1911 Sutton Avenue, Cincinnati, Ohio.
>
> 4. That on August 5, 2010, PNC Account No.xxx6926 contained the proceeds of the unlawful use, transfer, acquisition, or possession of SNAP/EBT cards or benefits.
>
> 5. That Defendant 1, the contents of PNC Account No.xxx6926, consisted solely of proceeds of the unlawful use, transfer, acquisition, or possession of SNAP/EBT cards or benefits.
>
> 6. That on August 5, 2010, the cash register located at Sutton Pony Keg, 1911 Sutton Avenue, Cincinnati, Ohio contained the proceeds of the unlawful use, transfer, acquisition, or possession of SNAP/EBT cards or benefits.
>
> 7. That Defendant 2, the contents of the cash register located at Sutton Pony Keg, 1911 Sutton Avenue, Cincinnati, Ohio, consisted solely of proceeds of the unlawful use, transfer, acquisition, or possession of SNAP/EBT cards or benefits.
>
> 8. That on or about March 14, 2006, Nazih Shteiwi, on behalf of Claimant, completed and submitted a USDA Food Stamp Application for Stores.
>
> 9. That, pursuant to the USDA Food Stamp Application for Stores, Claimant agreed to be held liable for all actions of its employees regarding the Food Stamp Program, including all acts of fraud and trafficking.
>
> 10. That on August 5, 2010, the cash register located at Sutton Pony Keg contained cash derived, in whole or in part, from PNC Account No. xxx6926.

(Horwitz Decl. at ¶ 4 and Attachment A).

**IV. Resolution**

The Government's motion for summary judgment should be granted as the undisputed facts demonstrate that the defendant properties are subject to forfeiture under 7 U.S.C. § 2024(e) as they are properties obtained by the use of an access device in violation of 7 U.S.C. § 2024(b) (food stamp fraud); properties involved in a transaction or attempted transaction in violation of 18 U.S.C. § 1956(a)(1)(B)(i) (concealment money laundering); or properties traceable to such properties or derived from proceeds traceable to one or more violations of 7 U.S.C. § 2024(b), 18 U.S.C. § 1029 (access device fraud), or 18 U.S.C. § 1343 (wire fraud). The Government's action against the defendant properties was brought pursuant to 18 U.S.C. §§ 981(a)(1)(A) and 981(a)(1)(C) which provide, in pertinent part:

> The following property is subject to forfeiture to the United States: (A) [a]ny property, real or personal, involved in a transaction or attempted transaction in violation of section 1956, 1957 or 1960 of this title, or any property traceable to such property. . . . (C) [a]ny property, real or personal, which represents or is traceable to the gross receipts obtained, directly or indirectly, from a violation of . . . (vi) section 1343 (relating to wire fraud) . . . .

18 U.S.C. §§ 981(a)(1)(A) and 981(a)(1)(C). Further, any real or personal property "which constitutes or is derived from proceeds traceable to a violation of" 7 U.S.C. § 2024(f)(2) (food stamp fraud) is subject to forfeiture. *See* 18 U.S.C. § 981(a)(1)(C).

The Government has presented undisputed evidence demonstrating that the defendant properties are subject to forfeiture. Specifically, the facts demonstrate that defendant one, the PNC bank account, consists solely of the proceeds from the unlawful use, transfer, acquisition, or possession of SNAP/EBT cards or benefits at Sutton Pony Keg. (Horwitz Decl., ¶ 4). Further, the undisputed evidence demonstrates that defendant two, the contents of the Sutton Pony Keg cash register, consist solely of proceeds of the unlawful use, transfer, acquisition, or possession of SNAP/EBT cards or benefits. (*Id.*). The record also shows that the individuals who were

owners or involved in the operations of the Sutton Pony Keg have pleaded guilty to violating various state and federal laws due to conduct associated with fraudulently obtaining SNAP benefits through the sale of non-eligible items. (Hackney Decl., ¶¶ 9-10; Doc. 1, ¶¶ 27-28). As the undisputed evidence demonstrates that the defendant properties consist solely of proceeds obtained through money laundering, wire fraud, and fraud of the national food stamp program, they are subject to forfeiture under 18 U.S.C. §§ 981(a)(1)(A) and 981(a)(1)(C).

The Court therefore **RECOMMENDS** that the Government's motion for summary judgment (Doc. 41) be **GRANTED**.

Date: 9/20/13

Karen L. Litkovitz
United States Magistrate Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

UNITED STATES OF AMERICA,
    Plaintiff,

vs.

CONTENTS OF PNC BANK ACCOUNT
NO. XXX6926 IN THE NAME OF MON
AMOUR, INC., *et al.*,
    Defendants.

Case No. 1:11-cv-20

Weber, J.
Litkovitz, M.J.

### NOTICE

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Nabih Shteiwi
1332 Parkway Court
Fairfield, OH 45014

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X
☑ Agent
☐ Addressee

B. Received by (Printed Name)    C. Date of Delivery

D. Is delivery address different from item 1? ☐ Yes
   If YES, enter delivery address below: ☐ No

3. Service Type
☑ Certified Mail   ☐ Express Mail
☐ Registered      ☐ Return Receipt for Merchandise
☐ Insured Mail    ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)   ☐ Yes

2. Article Number
(Transfer from service label)
7011 3500 0001 5345 9435

PS Form 3811, February 2004   Domestic Return Receipt   102595-02-M-1540